RANSOM YALE *vs.* ELIZA ANN DEDERER and NICHOLAS A. DEDERER.

Where a married woman, having separate property, joins with her husband in giving a promissory note, even as surety for him, she thereby charges her separate estate, in equity, with the payment thereof, which estate may be reached through the intervention of a receiver.

THIS was a suit in the nature of a bill in equity, to charge the separate estate of Mrs. Dederer, a married woman, with the payment of a promissory note, which she signed with her husband, Nicholas A. Dederer. It appeared from the pleadings and proofs in the case, that the note was dated December 26, 1853, payable with interest, on the first of May, 1854, and was signed by both defendants. This note was given in the place of two notes, one of $589.93, dated December 23, 1852, and signed by both defendants ; the other dated March 19, 1853, for $398, and signed by the defendant N. A. Dederer alone. These two notes were given for cows which the defendant N. A. Dederer purchased of the plaintiff. The defendant Eliza A. Dederer owned three farms in the county of Chenango at the

date of the sale of the said cows, and the giving of the said notes ; one of about 200 acres, situate in the town of German, another about 215 acres in Smithville, and about 90 acres of land situate in the town of Greene. When the defendant N. A. Dederer applied to the plaintiff to purchase said cows, he refused to sell to him except upon the condition that he would procure his wife to sign the notes with him, and which he agreed to do as a condition of the sale. The first note was signed by both defendants at the time. The second note was given by the defendant N. A. Dederer, with the agreement that he should procure his wife to sign it, and the note in suit was given on the surrender and for the consideration of the two notes ; and Mrs. Dederer signed this note with her husband, and there was some evidence in the case to show that these cows, or at least a part of them, went to stock one of her farms, but the court found that there was not evidence sufficient in the case to establish the fact that the purchase of these cows was for her benefit, or that they went to enhance her separate estate, or that either the cows or the avails went for her benefit, and the court found that she signed the note upon which this suit is brought, as surety for her husband. It was admitted upon the trial, that Mrs. D. had a separate property in personal and real estate, amply sufficient to pay the plaintiff's demand. It was proved that the defendant N. A. Dederer was insolvent; that the plaintiff had obtained a judgment against him upon this note; that an execution issued thereon against him had been returned *nulla bona,* and that he had made a general assignment of his property for the benefit of his creditors.

*Henry R. Mygatt,* for the plaintiff. I. The separate property of the wife is charged in this case. In the leading English case of *Hulme* v. *Tenant,* (1 *Bro. C. R.* 16,) it was adjudged that the bond of a *feme covert* jointly with her husband shall bind her separate property. That bond was absolutely void at law, and there was no direct charge upon the estate. The rule laid down in *Peacock* v. *Mink,* that a *feme covert* acting with respect to her separate property is competent to act in all res-

pects as a *feme sole*, is said by Lord Thurlow, in *Hulme* v. *Tenant*, to be the proper rule, and necessary to support the decisions on this subject. Personal property settled upon a *feme covert* for her separate use is to be enjoyed with all its incidents. (*Fettiplace* v. *Gorges*, 1 *Ves. jun.* 46. 3 *Bro. C. R.* 8. *Rich* v. *Cockell*, 9 *Ves.* 369.) Where there are trustees, it is now established, overruling former cases, that a married woman can bind her separate property without their assent. (*Essex* v. *Atkins*, 14 *Ves.* 542.) It has been frequently held that the separate estate of a *feme covert* is rendered liable to pay her bond. (*Lillia* v. *Airey*, 1 *Ves. jun.* 277. *Norton* v. *Turville*, 2 *P. Wms.* 144. *Peacock* v. *Monk*, 2 *Ves.* 190.) Although it be given to her husband, or although she has joined in it with him as in *Hulme* v. *Tenant*, or with a stranger. (*Heatley* v. *Thomas*, 15 *Ves.* 596.) The same is held as to a promissory note given by a *feme covert*, in *Bullpin* v. *Clarke*. (17 *Ves.* 365. *Field* v. *Sowle*, 4 *Russ.* 112. *Master* v. *Fuller*, 4 *Bro. C. C.* 19.) · The recent cases decide that a *feme covert* can, as to her separate estate, enter into contracts, in the same manner as a *feme sole*. (*Murray* v. *Barlee*, 3 *My. & K.* 223. *Owens* v. *Dickenson*, 1 *Cr. & Ph.* 53.) The case of *Murray* v. *Barlee*, in which Lord Brougham delivers an elaborate opinion, (3 *My. & K.* 223,) is a leading case, and decides that the execution of a bond or a note by a feme covert, is evidence of an intent to charge her separate estate ; for if she had no reference to her separate estate, those acts would be nugatory : therefore her intent to charge her separate estate will be presumed. The judgment prayed for in this case is like that suggested by Ld. Eldon in *Hulme* v. *Tenant*. "Determined cases," observes his lordship, " seem to go thus far, that the general engagement of the wife shall operate upon her personal property, shall apply to the rents and profits of her real estate, and that her trustees shall be obliged to apply personal estate and rents and profits, when they arise, to the satisfaction of such general engagement." The English cases are cited in White's Equity Cases, (1 *Law Library, vol.* 49 *new series*,) at length to the note in *Hulme* v. *Tenant*, page 360. See also *Bell on the Law of Property*,

Yale *v.* Dederer.

(*Law Library, N. S. vol.* 51, *ch.* 7, *p.* 513.) In New York the English rule is adopted. In the case of the *Methodist Episcopal Church* v. *Jaques,* (3 *John. Ch.* 78,) Chancellor Kent reviewed the English cases and disapproved of the same, but the court of errors in that same case determined that a feme covert, as to her separate estate, in equity should be regarded as a feme sole and may dispose of her separate property without the consent of her trustee unless restrained by the trust deed. (17 *John.* 548, 578, 579, 585. *Dyett* v. *N. A. Coal Co.* 20 *Wend.* 570, 573.) Whatever doubt may have existed, the rule is finally established in our court of appeals, in *Vanderheyden* v. *Mallory,* (1 *Comst.* 462.) Justice Jewett, in delivering the opinion of the court, says, " The fact that the debt has been contracted by a woman during her coverture, either as a principal or a surety for herself, or for her husband, or jointly with him, seems, ordinarily, to be held prima facie evidence to charge her separate estate : without any proof of a positive agreement or intention so to do." The same rule is laid down by Justice Story. (2 *Story's Eq. Juris.* § 1400. *See notes to Story's* 4*th ed.*) In *Van Allen* v. *Humphrey,* (15 *Barb.* 558,) the justices of this district determined that " in equity, if a wife has a separate estate, it is made liable on her bonds, notes and other obligations, and even for her undertakings as surety for the husband's debts." And the fact that she gives a written obligation for the debt, has been held sufficient evidence of her intent to charge her separate estate. Insolvency of the husband was shown in this case, but that was unnecessary, as the giving of the written obligation fixed the liability. In this state, where laws are enacted for the more effectual protection of the property of married women, (acts of April 7, 1848, and April 11, 1849,) and the married female is permitted to hold to " her sole and separate use," the English rule is eminently proper as it acts like the recent New York statutes with respect to the feme covert's separate property in all respects, as if she was a feme sole. As the married woman is by statute likened to a single female as regards her separate estate, so she is subject to some of the liabilities and dangers of single life.

II. The objection, that the insolvency of Nicholas A. Dederer, one of the makers of the note in question, is not charged in the complaint, was properly overruled. Whether the husband be solvent or not, cannot affect the wife's liability. The credit in this case was given, relying on the responsibility of the wife. The evidence shows the husband insolvent. That insolvency strengthens the equities of the plaintiff. It was not necessary to show insolvency, and the proof thereof is not the subject of exception. The omission of all evidence of insolvency cannot change the respondent's case. "Where the court decides questions both of law and fact, the admission of improper testimony. is not the subject of a bill of exceptions." (*Arthur et al.* v. *Hart,* 17 *Howard,* ( *U. S.*) 6.)

This being a suit purely equitable, the judgment should direct the appointment of a receiver of the separate personal and real estate of the wife, and the application of said separate estate to the payment of the plaintiff's judgment. The only case in which an execution can be issued at law against the wife, is by virtue of the statute entitled "An act relating to debts contracted by women before marriage." (*Sess. L. of* 1853, *p.* 1057.) Under that act, the superior court of New York, in Foote against Morris and wife, (Hoffman, J.) ordered judgment and that execution be issued on said judgment against "the separate estate and property of the wife only." (12 *N. Y. Legal Obs.* 61.) It would be well for the statute to break in upon the rule of equity and order execution direct in all cases of judgments which are liens on the estates of married women. But this action assimilates to the case of a proceeding in equity, to render a wife's separate and perhaps equitable estate, subject to her contract, in which the court may enforce the judgment with the aid of a referee and receiver.

*Selah Squires,* for the defendant.

MASON, J. The rule is well settled at law, that a married woman cannot bind herself personally by any contract, in regard to her separate property, and no action at law can be

maintained against her upon such contract. (*Beard* v. *Webb*, 2 *Bos. & Pull.* 93. *Marsall* v. *Rutton*, 8 *T. R.* 545. *Van Derheyden* v. *Mallory*, 1 *Comst.* 462.) The rule, however, is different in equity, and I will proceed to state briefly, the principles which are deducible from the cases in courts of equity, without going into an examination of the cases themselves. As regards her separate property, a married woman is regarded as a *feme sole*, having the general power of disposing of it. Her separate property, however, is not in equity liable for the payment of her general debts, or of her general personal engagements. If therefore, during her coverture, she contracts debts generally, without doing any act indicating an intention to charge her separate estate with the payment thereof, courts of equity will not entertain jurisdiction to compel payment of such debts out of her separate estate. (2 *Roper on Husb. and Wife*, 235 to 238, *ch.* 21, 2. *Greatley* v. *Noble*, 3 *Mad.* 94. *Anguillor* v. *Anguillor*, 5 *id.* 418. *Duke of Bolton* v. *Williams*, 2 *Ves. jun.* 138, 150, 156. 4 *Bro. Ch.* 297. 9 *Ves.* 498. 2 *Story's Eq. Jur.* § 1398.) The separate estate will, however, in equity, be held liable for all debts, incumbrances and other engagements which she has expressly or by implication charged thereon. (2 *Story's Eq.* § 1399, *and cases.*) There has not been entire uniformity of opinion amongst those who have administered the equity jurisprudence of Great Britain and this country, as to what circumstances, in the absence of any positive intention to charge her separate estate, shall be deemed sufficient to create such charge. It is agreed, on all hands, that there must be an intention to charge her separate estate ; otherwise the debt will not affect it. The fact that the debt has been contracted during coverture, either as principal or surety for her husband, or jointly with him, seems ordinarily to be held prima facie evidence to charge her separate estate, as will be seen by reference to the following cases and authorities : (*Hulme* v. *Tenant*, 1 *Bro. Ch.* 16, 21, *note* 1. *Crosby* v. *Church*, 3 *Beavan*, 489. 1 *Craig & Phil.* 48, 52, 54, 55. 22 *Wend.* 526. 2 *Story's Eq.* 1398 *to* 1400, 1401. 15 *Ves.* 558. 17 *id.* 365. 9 *id.* 497, *note* (*a.*) 4 *Sim.* 82. 3 *Myl. & Rus.* 209. 1 *Sandf. Ch.* 26.

20 *Wend.* 570.   15 *Barb.* 558.   1 *Comst.* 462.   4 *Russ.* 112, 3 *Mad. Ch.* 387, 79, 94.   2 *P. Wms.* 145.   2 *Ves. sen.* 193. 2 *Ves. jun.* 138.   9 *Ves.* 486.   5 *Mad. Ch.* 414.   2 *Beav.* 363, 9 *Ball & Beatty*, 49.   2 *Roper on Husb. and Wife*, 243, *ch.* 21, § 3.   *White's Eq. Cases*, 324 *to* 344.   49 *Law Lib. N. S.* *p.* 355 *to* 378.   *Bell on Law of Prop., Law Lib. vol.* 51, *N. S.* 513, *&c. ch.* 7.)   These cases hold that if the wife have sepa-rate property, and joins with her husband in giving a promis-sory note, even as surety for him, she thereby charges her separate estate, in equity, with the payment thereof. The doc-trines upon which courts of equity have attained the result that the separate estate of a married woman was chargeable in equity, where there was no intention expressed to create a charge, are somewhat artificial in their texture, and can hardly be said to be uniform or consistent. The liability, however, in such cases, of her separate property, in equity, to pay such debts, is too well settled to cavil about the consistency of the reasons by which the courts have arrived at the result. This history of the law and the result of the cases are well stated in Bell on the law of property, (*Law Library, vol.* 51, *p.* 513, *&c. ch.* 7.)   I therefore direct that a judgment be entered for the plaintiff for the relief demanded in the complaint. (*a*)

[CHENANGO SPECIAL TERM, August 7, 1855.   *Mason*, Justice.]

(*a*) The following is the judgment entered in pursuance of the above decision, as approved by the court: This action having heretofore been brought on to be heard upon the pleadings and the evidence taken therein, and Henry R. Mygatt having been heard of counsel for the plaintiff, and Selah Squiers, Esq., having been heard of counsel for the defendant, and the court having duly considered the said pleadings, evidence and arguments, it is ordered, adjudged and decreed as follows:

*First.* That there is justly due at this date, to the plaintiff, on the promissory note made to the plaintiff, for nine hundred and ninety-eight dollars, with inter-est, on the 26th day of December, 1853, by the defendants Nicholas A. Dederer and Eliza Ann Dederer his wife, the sum of one thousand one hundred and ten dollars and seventy-two cents, and that the same be declared an equitable lien upon the personal and real separate estate of the said Eliza Ann Dederer, and that the personal estate be first applied to the payment thereof, and if not suffi-cient for that purpose, then the real estate.

Yale *v.* Dederer.

*Second.* That the said Eliza Ann Dederer, by joining with her said husband in the said promissory note, charged her separate estate with the payment thereof, and that the said one thousand one hundred and ten dollars and seventy-two cents, with interest from this date, and the plaintiff's costs, to be adjusted by the clerk of this court, with interest thereon from the date of said adjustment, and the sum of sixty dollars in addition thereto, in pursuance of section 308 of the code of procedure, be paid from the personal and real estate of the said Eliza Ann Dederer, by the receiver to be appointed in this action.

*·Third.* It is hereby referred to William N. Mason, of said county of Chenango, as a suitable referee to take an account of the separate estate, both real and personal, of the said Eliza Ann Dederer, and of the income thereof, and the situation and possession thereof, and report the same to this court.

*Fourth.* The said referee is hereby directed to appoint a receiver of the separate estate of the said Eliza Ann Dederer, and that said receiver, on filing an undertaking approved by the said referee, forthwith enter upon the duties of his office as said receiver; and that the said Eliza Ann Dederer assign, transfer and set over unto the said receiver, sufficient of her separate personal estate to satisfy the demand of the said plaintiff, if she have sufficient for that purpose, to be by him, the said receiver, sold and the avails thereof applied to the payment of the said plaintiff's demand; and that for any deficiency there may be after applying the personal estate to the payment of the said plaintiff's claim, the real estate of the said Eliza Ann be applied to that purpose; and that the said Eliza Ann assign, transfer and make over to the said receiver sufficient of her estate to pay the residuum of the claim of the said plaintiff, to be by said receiver sold at public sale, on reasonable notice, as also the personal estate to be sold in the same way; and that the said referee is authorized to examine any parties to this suit, on oath, as to the separate estate of the said Eliza Ann Dederer, with the power to the said referee to examine any of the parties on oath, and to compel the production of books and papers.

*Fifth.* The said defendants are hereby restrained from transferring or encumbering in any way, the separate estate of the said Eliza Ann Dederer, or the use or increase or profits thereof, until the entire amount to be paid to the plaintiff, as aforesaid, shall be fully paid.

*Sixth.* That all further directions and all further questions not disposed of by this judgment (if any) be reserved until the further order of the court, and that any of the parties to this action, upon due notice, be at liberty to apply to the court, from time to time, for such further directions as may be necessary; and should the plaintiff find any insuperable obstacles in the way of reaching and applying the separate property of the said Eliza Ann to the payment of the claim aforesaid, he is at liberty to apply for such further directions as may be necessary.