# SUPREME COURT.

RANSOM YALE agt. ELIZA ANN DEDERER, by her next friend Nicholas A. Dederer, and NICHOLAS A. DEDERER.

The court of appeals, in this case, (18 *N. Y. R.*, 265, *and* 17 *How. Pr. R.*, 165,) *held*, that Mrs. Dederer, the defendant, did not charge her separate estate by the execution of a promissory note with her husband, as his surety, not for her own benefit or the enhancement of her estate; that equity will not enforce against her a promise which is void at law; that in such case her separate estate can only be charged by virtue of some instrument for that purpose.

On the second trial of this case, this court at general term *held*, that the evidence showed that Mrs. Dederer, independent of the act of signing the note as surety, did intend to, and did in fact charge her separate estate with the payment of the debt, by a *verbal agreement* or *understanding* between her and the plaintiff.

The evidence (which of course is now given very full) principally relied on to establish this agreement is the *plaintiff's testimony* (not uncommon under § 399 of the Code) which states, "I told her that if I extended the time, I depended upon her for security for payment of the note; Mr. Dederer said you need not be afraid, if I am not able to pay it my wife is; *she said yes, if Nicholas is not able to pay it, I am.*"

(*The question seems to be, is such an assertion any thing more than a* VERBAL JUSTIFICATION *as* SURETY; *or of her* ABILITY *to perform a contract which the law says she cannot make, and if made, a court of equity will not enforce.* REP.)

*Sixth District, General Term, May,* 1860.

MASON, BALCOM, CAMPBELL *and* PARKER, *Justices.*

APPEAL by Eliza Ann Dederer to the general term, from the judgment entered against her at special term on the 4th day of August, 1859; being the second trial of the case; the court of appeals having reversed the judgment of the general term on the first trial, and ordered a new trial. (18 *N. Y. R.*, 265; *s. c.,* 17 *How. Pr. R.*, 165.)

The action was brought to charge the separate estate of Eliza Ann Dederer, the wife of Nicholas A. Dederer, with the payment of a promissory note, of which the following is a copy, to wit:

" $998. On the first day of May next, we, or either of us, promise to pay Ransom Yale, or bearer, nine hundred and ninety-eight dollars, with interest, for value received.

GREENE, Dec. 26, 1853.      N. A. DEDERER.

ELIZA ANN DEDERER."

It was admitted on the trial that this note was given for two promissory notes held by the plaintiff, one of which was for $589.83, dated Dec. 23, 1852, payable on the first of April, 1853, signed by N. A. Dederer and Eliza Ann Dederer, and the other for $348, dated March 19, 1853, payable on the first of November, 1853, signed by N. A. Dederer, only.

The plaintiff proved that the said Nicholas A. Dederer made an assignment for the benefit of his creditors on the 9th March, 1854, and was insolvent. That the plaintiff herein had recovered judgment against him on the note in suit on the 30th May, 1854, for $1037.29, and that execution had been issued thereon and returned unsatisfied on the 29th June, 1854. It was admitted that Mrs. Dederer was the owner in fee simple absolute of the farms of land mentioned in the complaint, to wit: a farm of about 200 acres, in German, called the Gould farm, and a farm of about 215 acres in Smithville, called the Warner farm, and a lot of land in Greene or Smithville containing about 90 acres, called the McIntosh lot; and that her separate estate also consisted of personal property. It was fully admitted that Mrs. Dederer's separate estate was sufficient to satisfy any judgment that could be rendered in the action.

The evidence upon the merits and bearing upon the question of intent by Mrs. Dederer, to charge her separate estate, was substantially as follows :

*Albert Yale*, a brother, and, at the time of the sale of the cows, a partner of the plaintiff, testified, that he knew of the sale of the two lots of cows to Mr. Dederer—the first lot of 21 cows in February, 1852, and the second lot of 12 cows in February or March, 1853. Plaintiff said to

Mr. Dederer that he wanted to sell them so that he could be safe—collect the money when he wanted it, and when it became due; and Mr. Dederer asked what would make him safe, and plaintiff answered, your wife's note and yours together would be safe, I think; that would buy the cows. Plaintiff asked Mr. Dederer if there were any claims upon Mrs. Dederer's property, and he said there were not, or not enough to amount to anything.  Plaintiff said, I suppose it is no more than right that she should sign the note, for I suppose the cows are going on her and your premises. Mr. Dederer said, I think I shall distribute them about, or something to that effect. ˙ Witness thought Mr. Dederer mentioned that he was going to drive them off the Warner farm.  Mr. Dederer gave his own note for the 21 cows at this time; and said when plaintiff came down to Greene, he would give his own note with his wife, or a satisfactory note.  It was to be a note of Mr. Dederer and his wife in satisfactory form.  On the sale of the second lot, the conversation and agreement was substantially like the first.  As witness was passing along the road he noticed half a dozen cows on the Warner farm; did not recollect whether it was after the sale of the first or second lot.  Mrs. Dederer was not present at the conversation and agreement testified to. ·

This testimony was objected to, on the ground that Mrs. Dederer was not present.  The objection overruled, and the testimony admitted.

*James H. Wavle*—lived on the Warner farm and worked for Mr. Dederer in February and March, 1852; drove about twenty cows, bought of Yale, to the Warner farm; they were selected out and in a lot by themselves.  Mr. Dederer told him what cows to drive there.  These cows were left on the Warner farm from four to six weeks; they were most of them taken to the King farm, owned by Mr. Dederer; they were taken to the Warner farm to eat up some hay, being a scarcity of hay at the King farm; none

of them were milked on the Warner farm; as they began to make bag they were driven to the King farm.

*Ransom Yale*, the plaintiff, testified to the conversation and agreements between him and Mr. Dederer, as to the sale of the cows, and giving the notes, substantially as testified to by his brother, Albert Yale. He then said that on the 26th day of December, 1853, the two notes were past due;. " I went to Greene, to Mrs. Dederer's house; Mr. Dederer and I went to the house together; I told him I came for my pay; he said he could not conveniently pay then; Mrs. Dederer was in and out; Mrs. Dederer was there part of the time and part not; she was in and out of the room; I said I was afraid of losing it to let it run; he said if he was not able his wife was, and that I could make myself perfectly secure; I said I wanted the money; he said he thought if I was secured I could wait, and proposed giving his wife as security again; I told him if I was safe I could do it I suppose, and as he proposed giving his wife, I inquired into the circumstances again of her property; he told me there was a mortgage of $2,500, given upon the Warner farm since the last sale of cows; I told him I was afraid if I didn't collect it then, I would have trouble about collecting it; Mr. Dederer thought I would be safe with his note and his wife's." (All the above conversation was objected to; objection overruled, and defendant excepted.)

" We then reckoned the interest on the two notes, and found that it was $998; he wrote a note and went into another room to get his wife to sign it; think she was not in; he then signed the note; he then took it out, and soon the note came back signed N. A. Dederer and Eliza A. Dederer; she came back with him; I asked her if she had changed her name, why the note was not signed as the note had been previous, by Eliza Ann Dederer; she said she sometimes signed it so; I told her I wanted it right; I told her that if I extended the time, I depended upon

her for security for payment of the note; Mr. Dederer said, you need not be afraid, if I am not able to pay it, my wife is; *she said yes, if Nicholas is not able to pay it, I am;* then we drew up a new note, and the note in suit was executed at that time, and I gave up the old paper and took the new one; I think I have seen some of the cows on the Warner farm in May or June, 1854; I think I saw about twelve on the Warner farm; I will correct that, I think it was May or June, 1853; I think it was in the spring before the assignment; I think I saw the same cows in Willett; I saw the cows in pasture at Warner farm, which was a dairy farm."

The plaintiff closed his case, and the defendant moved to strike out all the evidence of conversation had between Nicholas A. Dederer and Ransom Yale, when the said Eliza Ann was not present. The court refused to thus strike out, and the defendant excepted. The defendant then moved to non-suit the plaintiff, upon the ground that upon the facts proved, the separate estate of the said Eliza Ann Dederer was not liable for the payment of the note in suit; the court refused to non-suit, and the defendant, Eliza Ann Dederer, excepted. Judgment was thereupon rendered that the amount of the note, principal and interest, was due to the plaintiff, and was an equitable lien upon the personal and real estate of the defendant, Eliza Ann Dederer.

SELAH SQUIRES, *for appellant.*
HENRY R. MYGATT, *for respondent.*

By the court—MASON, Justice. When this case went to the court of appeals before, there was no evidence in the case of an intent on the part of Mrs. Dederer to charge her separate estate with the payment of this debt of the plaintiff, except the bare fact that she signed the note with her husband, as surety for him. In short, there was no

evidence of an intent to charge her separate estate with the payment of the debt except what equity would infer from the act of signing. I held on the first trial that the fact that she signed the note as surety for her husband furnished of itself evidence of an intent to charge her separate estate, acting upon the doctrine of some of the cases in equity, which hold that the wife must intend something by signing, and as she knew that she could create no personal obligation or liability by signing, she must be deemed to have intended to charge her separate estate in equity. (2 *Barb.*, 284.)

The court of appeals reversed the judgment, and have certainly settled the rule that from the bare act of signing a note as surety for her husband, no such intent to charge her separate estate in equity shall be inferred, and that she does not charge her separate estate by the bare act of signing a note as surety for her husband. The case is now changed by evidence on the last trial, which not only shows that she signed the note as surety for her husband, but the evidence shows further and independent of the act of signing, that she did intend to charge her separate estate, and did charge it with the payment of this debt, if any verbal agreement or understanding between her and the plaintiff to that effect can charge it. This brings us to the real question in the case. Can a married woman, by signing a note as surety with her husband, intending thereby to charge her separate estate, and agreeing verbally or by parol that her separate estate shall be charged, bind her estate in equity to the payment thereof? The court of appeals did not decide this question against the plaintiff, when this case was before that court on the former appeal. Judge COMSTOCK admits that when a married woman holds the fee of lands under the acts of 1848 and 1849, she may charge it. He says, (18*th N. Y. R.*, *page* 272,) "my conclusion therefore is, that although the legal disability to contract remains as at common law, a

married woman may as incidental to the perfect right of property and power of disposition which she takes under the statute, charge her estate for the purposes, and to the extent, which the rule in equity has heretofore sanctioned, in reference to separate estates." It was admitted on the last trial that Mrs. Dederer is the owner in fee simple absolute of the real estate charged in the complaint herein as her separate estate, and that she became seized in fee thereof subsequent to the acts of 1848 and 1849 ; and Judge HARRIS, at page 281, speaking of this very case, says that a married woman will charge her separate estate "*when the circumstances of the case are such as to leave no reasonable doubt that such was her intention.*" He says again, at page 283, " it is simply a rule of evidence ; all agree," he adds, " that when the wife has expressly charged the payment of a debt upon her separate estate, whether it be her own debt or the debt of another, such charge is valid and will be enforced."

He regards the right of enjoyment of separate property as necessarily including the right of disposition, and the power of disposition embraces the power to charge her estate, and he adds, " when she does this of her own free will, uninfluenced by any unfair practices, however injudicious the act, the charge must be enforced."

Applying these principles to the case before us, there can be no doubt of the defendant's liability in this case. This certainly is no new doctrine in regard to the power of a married woman in equity over her separate property. It is the clear and uncontroverted doctrine of the court of chancery, in England, and of the courts generally in this country, and, as I understand, is the acknowledged doctrine in equity of the courts of this state. The courts have not differed over the question of her capacity in charging her separate estate, where the evidence shows that there was no doubt in regard to her intention to charge it. The difficulty seems to have arisen as to what shall be deemed

sufficient evidence to establish such intention, and upon this question the court of chancery in England have gone further than the courts of this state.  The decisions in England have gone the length of holding, that where the wife unites with her husband in giving such a note or obligation to pay his debt, it shall, without any other evidence of her intention, be charged upon her separate estate, and such is the doctrine of many of the state courts of this country.  The court of appeals have said in this very case, such is not the rule with us.  They have not decided, however, that where it is shown by extrinsic evidence, that she actually intended to charge her separate estate by signing with her husband for his debt, that she does not charge her separate estate.  Such a doctrine cannot be held without denying to her the power in equity of disposing of her separate property—a power which has hitherto been universally conceded to her.

She certainly can be no longer regarded as a *feme sole* in equity, as regards her separate property, if this doctrine is to prevail.

I am of opinion, for the reasons stated, that the judgment of the special term should be affirmed.

PARKER, J., concurred.

CAMPBELL, J., dissented.

BALCOM, J., took no part in the decision, having been counsel in the case.

----•◆•----

## SUPREME COURT.

