WM. BLUMER, ET UX., APPELLANTS, VS. POLLAK & CO., APPELLEES.

1. Where a married woman carries on business in her own name, having property employed in such business, and purchases goods upon her sole credit for the purposes of such business, her separate property may be subjected in equity to the payment of claims for money due for such purchases.

2. Property, viz : furniture purchased by a married woman at the request of her husband, and paid for by her husband, with which they furnish a hotel where husband and wife live with their family, though the hotel business may be superintended by her, and conducted in her name, does not become separate property of the wife unless by some act of the husband indicating an intention that it shall be her separate property. Such property is the property of the husband and is liable for his debts.

Appeal from the Circuit Court for Escambia county.

The bill in this case was filed by appellees to obtain payment of a sum of money alleged to be due from Mrs. Blumer, the wife of co-appellant, for merchandise sold by them to her out of her separate personal property.

It is not denied that she purchased goods of appellees as alleged, but it is alleged by appellants that at the time of such purchase she was and now is the wife of Wm. Blumer, that she bought the goods without the knowledge of her husband, and without his consent or authority.

Complainants allege that for some years past, with the knowledge and consent of her husband, Mrs. Blumer con-

ducted business on her own account in Pensacola, and the goods were sold to her upon her sole credit and to become her sole and separate property, and for the purpose of replenishing her stock of merchandise in the course of her business, and they were so used. It is further alleged that she owns and has legal title to a large amount of separate personal property in Pensacola recently acquired by her by purchase, which is chargeable in equity with the payment of the complainants' demand.

Appellants admit that Mrs. Blumer did once conduct the business of millinery in Pensacola, but it was unprofitable and resulted in a great loss, and she acquired no separate property from the same. They deny that she has or ever had legal title to a large amount or any amount of separate personal property, and deny that she has any separate property or estate of any character.

The bill prays that Mrs. Blumer be enjoined from incumbering or disposing of her separate property, and that the separate property of Mrs. Blumer be decreed to be chargable with the payment of the claim and sold for that purpose.

Wm. Bennett, a witness for complainants, testifies as follows: " I have some knowledge of Mrs. F. Blumer having purchased some property in the past year or two. She purchased of the Louisville Furniture Manufacturing Company, of which I am President, a lot of furniture consisting of assorted household furniture, amounting in value to $431.46 ; this purchase was made in Louisville, Ky., in the month of December, 1878 ; the said furniture was shipped to Mrs. F. Blumer, Pensacola, Fla."

Wm. Blumer, being duly sworn, says: " I and my wife are defendants in this case. My wife conducted business in the City of Pensacola with my knowledge for two years ; my wife is superintending the management of the Euro-

pean Hotel at this time, and has been for about nine months. She has superintended the hotel ever since it was opened. The hotel is conducted in my name. The name of the hotel is the European Hotel. The license for the hotel was taken out last year in the name of my wife. I took out license in my own name on the 16th day of February, A. D. 1881.

"It was generally understood that Mrs. Blumer was the proprietress of the hotel, but I had to foot the bills. The bills were footed partly with the proceeds of the hotel and partly outside. I had knowledge of my wife buying furniture from the Louisville Furniture Manufacturing Company about the time the hotel was opened by us. The furniture is still in the house. I believe that is the only purchase made by her of that company."

Cross-examined—

"I mean by my wife superintending the hotel that I rented the house, footed all the bills, partly with the proceeds of the hotel and partly otherwise; my wife purchased the supplies and I furnished the money. My wife had no pecuniary intest, separate from my own, in the business from its opening until now. When we opened the house we had to have furniture, and I told my wife to make a memorandum of what we needed, and told her to write on to see on what terms we could get this furniture. They replied, for half cash and half in ninety days. My own money was used to purchase that furniture, every dollar of it. At the time the license was first taken out I was short of funds, and my wife went around and saw the Collector, and he gave her one month in which to pay the license; and when the month expired I furnished the money to pay for them, and the license was made out in her name.

"The pecuniary responsibility of the business of the hotel was entirely upon me. I do not know that my wife

has any pecuniary interest in the business, separate from my own, other than as to her wearing apparel—she has no independent interest in the pecuniary or property. The furniture purchased of the Louisville Furniture Manufacturing Company is still in the house, and is mine. There have been no funds accumulated from the profits of the hotel. It has been a losing business to me, inasmuch as I am more or less indebted to the merchants around town on account of it."

Re-direct—

"I never purchased the furniture mentioned above from my wife. My wife never derived a dollar from the proceeds of the sale of the remnants of the millinery business. Ever since and before the hotel started I have been keeping a bar, separately and distinct from the hotel, in a different part of the town. The furniture was in part paid for by the proceeds of the hotel. The first payment was paid entirely by myself. The last payment was in part made from the proceeds of the hotel."

Mrs. F. Blumer, being duly sworn, says: "I am one of the parties in this suit. I am acquainted with European Hotel, which is conducted in the City of Pensacola. The license for last year was gotten out by myself and paid for by Mr. Blumer. I have run the hotel for Mr. Blumer.

"The house was advertised in my name in the Pensacola papers. The bills contracted for the hotel were made in my name. The bills were presented to me and paid by me out of the proceeds of the hotel, and the proceeds of the hotel were Mr. Blumer's. The bills referred to were contracted in Pensacola.

"I have ordered furniture from the Louisville Furniture Manufacturing Company for Mr. Blumer. I wrote the order for the furniture and signed my own name to it. I did not remit the money for the first payment, for I was

sick in bed at the time, and Mr. Blumer made the remittance himself, and it was his own money."

Cross-examined—

"The bills referred to as having been contracted in town were paid by money of Mr. Blumer's, proceeds of the business ; a portion of these were paid by money taken out of his other business. Mr. Blumer supplied the money for the conducting of the business referred to. I had no interest pecuniarily, only that we opened the European Hotel thinking that if the business would yield a support for our family that Mr. Blumer would give up the business of the Java Saloon, as he was tired of conducting it.

"I have not now, nor never had, any pecuniary or property interest in the business separate and outside of my husband. I have been heretofore, and am now, conducting the business on my husband's responsibility. I have paid money of my own for funiture or supplies for the hotel. Mr. Blumer has supplied the money to meet the demands of the business. I have received no pecuniary or property benefits, separate from my husband, from the business. The only benefit I have derived from the business is my board. I do not own any of the property or furniture connected with the hotel. I do not own any property or furniture derived from the proceeds of the hotel. I have no property in the hotel outside of my wearing apparel."

Re-direct—

"I have no property elsewhere, not five cents' worth. The European Hotel referred to is located on the corner of Government and Railroad or Saragossa streets, in the City of Pensacola, Fla. The building occupied as the European Hotel is rented from month to month. The bills are presented to Mr. Blumer the first of every month and he pays them. I have never purchased but one bill of furniture from the Louisville Furniture Manufacturing Company."

The court decreed that there was due complainants for the goods sold by them to Mrs. Blumer $275.42; that it was a charge upon the separate property of Mrs. Blumer, viz: the furniture in the European Hotel in Pensacola; that the money be paid by a day named or else it shall be sold to satisfy the debt, with interest and costs.

From this decree defendants appealed. They insist that the decree is erroneous, because Mrs. Blumer was incapable of contracting by reason of her coverture.

2. That the credit was given her without reference to her ability to contract, and without reference to any separate estate or property of Mrs. Blumer.

3. That by the testimony Mrs. Blumer at the time, or since the purchase, had not and has not had any separate property.

4. That no money was made in the millinery business, and it was given up before the opening of the European Hotel as appears by the testimony.

5. That the furniture in the European Hotel was the property of Wm. Blumer.

6. That the decree charges the property of Wm. Blumer, and not the separate property of Mrs. Blumer, with a debt illegally contracted by the wife long before the purchase of the furniture for the hotel, and that for these reasons the decree should be reversed.

*J. P. Jones* and *J. E. Yonge* for Appellants.

Mrs. F. Blumer, being under the disability of *coverture*, cannot make a contract to bind herself personally at common law. The Constitution and statutes of this State make no change in this respect. Dollner, Potter & Co. vs. Snow, *et als.*, 16 Fla., 86; Hodges, *et al.*, vs. Price, 18 Fla., 342.

The evidence shows that the credit was given to Mrs. F. Blumer personally, it not being pretended that she had,

at the time of the purchase by her, nor since, any separate property upon which to charge the debt. (See the testimony of Mrs. and Mr. Blumer in the cause.)

The principle upon which a wife may charge her separate estate or property is stated to be, " that where by her contract the debt created is made expressly a charge on her separate property, or is expressly contracted on its credit, or where the consideration goes to the benefit of such estate or property, or to enhance its value." There must be an intention at the time of the contract to charge it. Dollner, Potter & Co. vs. Snow, *et als.*, 16 Fla., 86 ; Schoul. Dom. Rel., 237 ; 3 Waite's Actions & Defences, 676, and authorities cited.

The testimony shows that Mrs. F. Blumer had no separate property, hence could neither have charged nor intended to charge any separate property, or have contracted with reference to it. (See testimony of Mrs. and Mr. Blumer in the cause.)

The testimony further shows that Mrs. F. Blumer acquired no separate property by her millinery business, but on the contrary, that said business was unremunerative.

The testimony shows that the furniture purchased of the Louisville Manufacturing Company, and which is made subject to Mrs. F. Blumer's debt, was purchased and paid for by her husband's direction and with *his* money.

And even furniture purchased by the wife, with the income of her separate property (where she has it), and mixed with the furniture of the husband, it becomes the property of the husband, unless it was understood between them, at the time of the purchase, that he should hold it as trustee merely. Schoul. Dom. Rel., pp. 207, 216, and authorities cited.

It is a well settled principle, both of law and equity, that, in absence of a distinct gift from the husband, all the wife's

earnings belong to him, and not to herself. And statutes which authorize married women to hold property acquired by gift, grant or purchase do not carry the wife's earnings by implication. If husband and wife carry on a joint business the stock in trade will be subject to husband's obligations. So the husband will be liable for the debts, if it appears that he participated with the wife in the benefits. Schoul. Dom. Rel., p. 242, *et seq.*

Evidence that the property in question was purchased by her, on her own credit, *when she had no separate property*, or other capacity to contract, is evidence of title in her husband. Ab. Trial Ev., p. 168, and authorities cited.

Presumption in favor of purchase with husband's means, unless proof that it was made with wife's separate funds. Price vs. Sanchez, 8 Fla., 136.

There is nothing in the testimony showing any relation between the separate property, defectively described and pretended to exist in Mrs. F. Blumer, in the bill of complaint, and the property charged in the decree, to-wit: "*The furniture in the European Hotel*," which was purchased long after the abandonment of the millinery business, and which, according both to the law and the testimony, belongs to the husband, William Blumer.

*John C. Avery* for Appellees.

The appellees claim (1) that the property in question belongs to Mrs. F. Blumer, or that, at least, the conduct of the appellants has been such as to estop them, in equity, from maintaining the contrary; and (2) that it is chargeable in equity with the payment of their demand.

First. For the purposes of this case this property must be treated as the separate statutory property of Mrs. Blumer.

The appellees were compelled to take as witnesses the ap-

pellants, who, it will be seen, inject into their testimony, at every step, assertions that the property belongs to Mr. Blumer. Fortunately, however, for the appellees, such averments are only conclusions of law, and sufficient facts are elicited to establish, for the purposes of this case, ownership in the wife.

From the evidence we have the following state of facts: The property was bought in the name of the wife; it was ordered by her; credit was given to her; the husband was not mentioned in the transaction; the furniture upon its arrival here was put into a hotel managed by her, conducted in her name, and advertised in her name in the local papers, and for conducting which a license was issued to her in her name and on her demand; and she had charge of the hotel whilst her husband conducted a separate and different business elsewhere.

It thus appears that every act which the public could view indicated that the furniture was the property of Mrs. Blumer, and that the hotel business was hers alone.

The public could not be apprised of the secret understanding between the appellants.

If it is true that there was such an understanding, they were exceedingly careful to produce a different impression upon others; and the reasonable conclusion is that their object was to put the property out of the reach of his creditors.

And now that her creditors are pursuing it, a court of equity will not assist the appellants to tear away the badges of ownership which they deliberately, and perhaps designedly, put upon it.

Second. If the property in question is to be treated as that of Mrs. Blumer, then it is her separate statutory property, and the question arises whether it is chargeable in equity with the payment of the appellees' claim.

Separate statutory property is in this regard just like separate equitable estate, of which the married woman has the *jus disponendi*, because a married woman has, in Florida at least, the right of disposing of her separate statutory property. .

"The principle applies to separate estates under the statute, as well as to estates settled to her sole and separate use by deed or device." Williams vs. Urmston, 35 Ohio St., 296; s. c., 35 Am. Reps., 611; 2 Bish. on Law of Md. Women, Secs. 203 and 4; 18 N. Y., 265; 37 N. Y., 35; 23 Ala., 639; 22 Barb., 371.

" Out of the power which a *feme covert* has to dispose of her separate estate, or the income thereof, grows the lesser power, which is included in the other, to charge the estate with a specific debt or engagement. And the doctrine is universal in our American courts that the lesser power arises wherever the greater does." Bishop on the Law of Married Woman, §850; 2 Story's Eq. Jr., §1399; Jackson vs. West, 22 Md., 71; Gunter vs. Williams, 40 Ala., 561; Taylor vs. Shelton, 30 Conn., 122; North Am. C. Co. vs. Dyett, 7 Paige, 9; Dyett vs. N. Am. C. Co., 570.

I do not think the husband is required to join with his wife in order to create such charge, even if that were necessary in case of a conveyance of personal statutory property. The charge is not a conveyance, a mortgage or even a lien. It is at most an appointment out of the estate. 2 Story's Equity, §1396, Jr.

Equity only lays hold of the property to pay the debt. Oliver vs. Dickenson, 1 Craig & Phillips, 48, cited in note 2 of 2 Story's Eq. Jr., §1937, 12th Ed.

But if the husband's assent is necessary, that must be presumed from his knowledge of his wife's being in business, which implies the giving and receiving of credit.

Are the circumstances surrounding the origin of the ap-

pellees' claim sufficient to create a charge in equity upon the separate property of Mrs. Blumer?

The tendency of the courts now is to presume such charge in almost every case where a *feme covert* makes a debt. The creation of the debt is *prima facie* evidence of an intention to charge the estate. 1 Bishop's Law of Married Women, §878 ; Greenough vs. Wiggingson, 2 Greene, Iowa, 435 ; Collins vs. Rudolph, 19 Ala., 616 ; Ozley vs. Ikelheimer, 26 Ala., 332; 1 Story's Eq. Jr., §1400.

But in this case the debt was contracted by Mrs. Blumer with the appellees for the benefit of her business, which was her property and part of her separate estate. The debt is due for goods purchased by her from the appellees for the purpose of replenishing her stock. In every such case a charge arises which equity will enforce.

"It is believed to be the universal doctrine, if anything on this subject can be said to be so, that when a married woman contracts for the benefit of her separate estate, and the contract is silent as to source of payment, it shall be presumed to be a charge on such estate." 1 Bishop on the Law of Married Women, §875 ; Frazer vs. Brownlow, 3 Ir. Eq., 237 ; Gardner vs. Gardner, 22 Wend., 526 ; Palm vs. Lent, 5 Bosn., 713 ; Dyett vs. N. A. C. Co., 20 Wend., 570 ; Franklyn vs. Beatty, 27 Minn., 347.

But the peculiar circumstances under which this debt was made should be sufficient in equity to bind the property of the wife without reference to the last mentioned rule.

The credit was given to the wife alone. It was to assist her in her separate business. The giving of the credit was accompanied by risks such as are incidental to business. In the event of a failure in business no resort could be had against her personally. Her property was the only security that could be looked to in case of her failure to pay, whether from misfortune or fraud. The conclusion, therefore, seems

natural that it was in contemplation of the parties that the appellees' security should be the wife's property.

THE CHIEF-JUSTICE delivered the opinion of the court.

There has been much conflict in the decisions of courts of equity on the subject of the character of the contract of a married woman by which a debt may be created which will be a charge, or chargeable upon her separate estate or property, real or personal.

Neither the courts in England nor those of this country are in harmony on the question.

Some of them hold that any credit obtained by her for any purpose, or any promise by her to pay money, whether for her own use or as a security for her husband or another, is sufficient to create a charge upon her separate property. Others hold that a married woman's debt is chargeable in equity upon her estate only when contracted on the credit of the separate estate, or for its benefit, or for the benefit of the woman, and this, not upon the ground that the contracting of the debt is of itself an appointment or charge, but because she, having had the benefit of the money or property for which she agreed to pay, it is just that her estate should answer it. The subject is very fully discussed in Story's Eq. Jur., §1400, *et seq.*; 1 Bish. Law of Married Women, §§854, 1879.

The case of Yale vs. Dederer was before the Supreme Court of New York in 21 Barb., 286; 31 Barb., 525; and in the Court of Appeals in 18 N. Y., 265; and 22 N. Y., 450, in which the subject received a very thorough discussion and all the leading adjudications examined. Selden, J., in the last case, remarks: "No rule can ever be stable, the reasons for which are constantly changing. If we desire precision and certainty in this branch of the law, we must recur to the foundation of the power of a *feme covert*

to charge her separate estate, and this has heretofore arisen solely from her incidental power to dispose of that estate. Starting from this point it is plain that no debt can be a charge which is not connected by agreement, either express or implied, with the estate. If contracted for the direct benefit of the estate itself, it would of course be a lien, upon a well founded presumption that the parties so intended, and in analogy to the doctrine of equitable mortgage for purchase-money. But no other kind of debt can, as it seems to me, be thus charged without some affirmative act of the wife evincing that intention; and there is no reason why her acts in this respect should not be tested by the same principles and rules of evidence which are applied to similar questions in other cases." All the Judges concurred.

The court in Massachusetts (Willard vs. Eastman, 15 Gray, 328,) indorsed the rule in Yale vs. Dederer. These decisions are strongly fortified by argument and sound reason.

Whichever rule prevails the bill in the case at bar may be sustained. It alleges that Mrs. Blumer was carrying on business at Pensacola in her own right with the knowledge and consent of her husband, and in the course of that business, which had been so conducted by her for several years, she purchased goods from complainants with which to replenish her stock of merchandise, and the goods so purchased are not paid for. This allegation is sufficient to show *prima facie* that she had separate property and made the purchases to enhance that property.

Under the rule announced by all the courts, though Mrs. Blumer is not liable to be sued at law or in equity to establish a personal judgment against her, yet in equity the court may subject her separate property to the payment of any indebtedness contracted by her for the benefit of such separate property.

Holding that the bill can be maintained for this purpose, we next inquire whether she has such separate property, and whether the furniture in the European Hotel is such property as was found by the decree, and directed to be sold to satisfy the claim. That property was ordered by her and shipped in her name, and was put into the hotel where the business of keeping lodgers and boarders was conducted in her name; the license issued in her name; she advertised the house as kept by her, and provisions and supplies were purchased for the house, and bills made therefor in her name. But the answer of the defendants and their testimony shows that the furniture, though ordered by her and shipped in her name, was paid for in part by the husband and in part by the earnings of the hotel; the money to pay for the license was furnished by him; he rented the house and paid the rents; he is indebted to persons about town on account of the hotel; she had no money left of the business formerly carried on, and she had no money invested in the hotel, in the furniture or the business. The hotel business was entered into for the purpose of support of Blumer and his wife and family, and no money has been made by it beyond that. They live together in the hotel, she having the care and superintendence of it, while he carries on other business out of which he has paid a portion of the expenses of the furnishing, supplying and conducting the hotel.

The answer denies the equities of the bill as to the wife having any present separate property, and this denial is not met by competent proofs in rebuttal. The testimony shows that the property was paid for by him and out of means furnished by him. While the fact was that the bills were made in her name and the business conducted in her name, yet she put no money or property of her own into it. No gift or transfer by the husband to the wife of the property

or its proceeds is apparent. Her order of the furniture, though in her name, was the result of his request that she make a list of what they required and "write on to see on what terms" it could be procured. She acted as his agent, as the testimony shows. No fraud is charged or proved.

The evidence establishes that the property in the hotel is that of the husband, and is subject to the payment of his debts. No credit was extended to her by these complainants on the faith that she was the owner of this furniture, for it was procured long after she purchased the goods from them, and was not therefore the basis of her credit.

Our conclusion, therefore, is that the furniture in the European Hotel is not the separate property or estate of Mrs. Blumer, and that the decree to that effect, and that it be sold to pay the complainants' claim, must be reversed, and it is so decreed, with costs against appellees.