### Sarah P. Deering v. Frank R. Boyle.

Married Women—*Liability on Promissory Note.* When a married woman executes a promissory note in payment and satisfaction of her husband's debt, an action may be maintained against her on said note, and her separate property applied in payment of the same.

### Error from Bourbon District Court

Action upon a simple promissory note executed by a married woman to secure her husband's debt. Demurrer to defendant's answer; and judgment thereon, at the March Term, 1871, in favor of the plaintiff, *Boyle*. Mrs. *Deering*, defendant, brings the case here on error. The facts are stated in the opinion.

*McComas & McKeighan*, for plaintiff in error, cited and relied on the cases of *Yale v. Dederer*, 18 N. Y., 265, and 22 N. Y., 450; *Jones v. Crosthwaite*, 17 Iowa, 393, and *Johnson v. Rugg*, 18 Iowa, 137.

*Hulett & Hill*, for defendant in error, cited § 2, ch. 62, Gen. Stat., and § 29 of the civil code; *Todd v. Lee*, 15 Wis., 365; 36 N. Y., 600; 15 Vesey, 596; 1 Comst., 462; 2 Story Eq., §§ 1400, 1401; Wil. Eq., 651.

The opinion of the court was delivered by

VALENTINE, J.: This was an ordinary action on a promissory note brought by Frank R. Boyle, plaintiff below, against Sarah P. Deering, defendant. The defendant answered to the plaintiff's petition as follows:

"Defendant further avers that said note was executed and signed by her while she was the lawful wife of one George M. Deering, and that said George M. Deering was at the time of the execution of said note indebted to said plaintiff F. R. Boyle, and said note was given and executed by said defendant in payment of and satisfaction of the sole, separate, and individual debt of said George M. Deering, and without any benefit or consideration whatever moving to said defendant."

The plaintiff demurred to this answer, on the ground that it did not state facts sufficient to constitute a defense to the petition. The court below sustained the demurrer, and the defendant as plaintiff in error now brings the case to this court.

That such a contract or promise as the one embodied in the said note, would be void at common law, we suppose will not be questioned; or that an action at common law could be maintained upon said note, we suppose will not be claimed. But these are not questions involved in this case; and therefore all the authorities that may be referred to in support of these propositions are wholly inapplicable to the case at bar. The real questions to be considered in this case are, whether said note would be held valid in a suit in equity to enforce its payment, or whether it is valid under our statutes. If considered valid in either case the plaintiff would undoubtedly have the right to recover in this action. If it be said however that this action is in form an ordinary action at law, we would answer that while that is not strictly true, yet it makes no difference, provided facts sufficient are stated to show a good cause of action as provided by our code. The plaintiff's petition was drawn under § 123 of the code, and is sufficient under that section. Under such a petition if the plaintiff has any cause of action on the note, either in law or equity, he may recover;

and if the defendant has any defense, either in law or equity, it devolves upon her to state it in her answer. In this state all distinctions between actions at law and suits in equity, and the forms of all such actions and suits are abolished, and in their place we have but one form of action called a civil action: Code, § 10. Both common-law and equity jurisdictions are vested in and administered by the same court. And whenever the rules of the common law and those of equity differ, as they probably do as applied to the note now in controversy, equity being the stronger jurisdiction the courts of this state must follow the rules of equity.

Could the plaintiff recover, in equity, on said note? It has been unquestionably settled in England, and pretty well settled in this country, that a married woman is regarded in equity, as to her separate property, as a *femme sole*, and her separate property is charged with all her debts and obligations without any *express* intention on her part so to charge it. For instance, whenever a married woman gives a promissory note it will be presumed in equity that she intends to charge her separate estate unless the contrary be shown. The authorities are very numerous upon this subject, and most of them may be found cited in Mr. Bishop's work on the law of married women. (1 Bishop on Married Women—English authorities, §§ 848 to 858; American authorities, §§ 864 to 879.) The doctrine as above stated was hardly questioned in this country until the decision of the case of *Yale v. Dederer*, in New York, in 1860. That case was first decided by the Supreme Court of New York in 1855: 21 Barb., 286. It was then decided in accordance with what was at that time generally if not universally understood to be the law both in England and in this country. Afterwards the case was taken to the Court of Appeals, and reversed by a divided court; Denio and Rossevelt, JJ., dissented, and Strong, J., expressed no opinion: 18 N. Y., 265. Afterwards it was again decided by the supreme court, (31 Barb., 525,) and again (in 1860) taken to the Court of Appeals and reversed: 22 N. Y., 450. At the time of this last decision by the Court of Appeals that court decided that where a married woman

signed a note as surety for her husband it would not charge her separate estate though so intended. This was hardly good law at the time it was so decided; and even the courts of New York have ever since been trying to get back to the true doctrine without expressly overruling this decision. In the case of *Owen v. Cowley*, 36 N. Y., 600, it was decided by the Court of. Appeals that "Where a charge is created by the express agreement of a married woman for a good consideration, though for a purpose not beneficial to her separate estate, she is bound in equity by the obligation she thus deliberately chooses to assume." In the case of *Ballin v. Dillaye*, 37 N. Y., 35, it was held by the Court of Appeals that "the separate estate of a married woman was chargeable in equity for any debt she might contract on the credit of or for the benefit of such estate." In the case of the *Corn Exchange Ins. Co. v. Babcock*, 42 N. Y., 613, it was decided in 1870, by the commission of appeals, that a married woman could charge her separate estate by indorsing on a promissory note given by her husband and others the following words, to-wit: "For value received I hereby charge my individual property with the payment of this note: Armina Babcock;"—although this indorsement was made without consideration, without benefit to her separate estate, in a transaction in which she had no interest, except as a wife, and in which her husband had no interest except a joint interest with others. The courts of New York by these decisions have placed themselves in the ludicrous position of declaring that in *equity* a married woman's contract does not depend for its validity upon any rules of equity or justice, but simply upon whether that portion of the contract which charges her separate estate is expressed in writing or not. The case of *Yale v. Dederer*, (22 N. Y., 450,) was severely criticized in the case of *Corn Ex. Ins. Co. v. Babcock*, (supra;) and so it had previously been criticized and disapproved in the able and exhaustive opinion of Chief Justice Dixon in the case of *Todd v. Lee*, 15 Wis., 365. Mr. Bishop in his work on Married Women, says that the several differences of opinion upon this subject may be

reduced to two. And then he uses the following language: " On the one side is the doctrine that a married woman, who in these transactions cannot bind herself personally, is presumed, when she has a separate estate, if in form she contracts a debt but does not in express terms make it a charge on this estate, to be a scoundrel, meditating a cheat on the other party. She goes into a retail shop, for example, and looking at a dress says, ' I will pay you for this,' and takes it away. What she gives is her promise. As a thing binding on herself it is a nullity; but the shop-keeper thinks he is getting something of value, and so parts with his goods. He may know the woman is under coverture, but he knows also that she has a separate estate. She knows that she has no means of paying except out of this separate estate, but by resorting to this she knows she has the means. ˙ Does she intend to resort to this? If she does, she intends to charge it—she does in her mind charge it; she means to go to it, and she considers whether there will be enough left to buy another dress. But the judicial opinion now under consideration says, that though it is quite possible the woman may mean all this, it is also possible she may be meditating a cheat; therefore the tradesman, to recover the debt as against the separate estate, must prove that when the woman bought the goods she was in an honest frame of mind. On the other hand, the opposite judicial opinion holds, that a married woman, like all other parties appearing before judicial tribunals, shall be presumed to be innocent until she has been proved guilty—honest-minded, until the contrary appears—and that she cannot herself allege her own guilt or fraud. Thus, this class of opinion carries the ordinary principles of the law into the law of married women." 1 Bishop on Mar. Women, § 873.

When a married woman executes a promissory note, she of course means something. She either means to charge her separate estate, or else she means to cheat and defraud the person to whom she gives the note. Is it not more charitable to suppose she means the former? But suppose she means the latter, will *courts of equity* hear her plead her own guilt and

fraud? If the contract of a married woman does not bind her separate estate, then of course it is a nullity, for it is well settled that it cannot bind her personally. But to give her contract such a construction violates at least two well-settled principles of law; first, it presumes her guilty of fraud, before the fraud is shown; second, it adopts a construction which will defeat the contract instead of adopting that construction which will prevent its failure, and give effect to the obligation of each and all the parties. We think the supreme court of Missouri has decided this question correctly: *Coats v. Robinson*, 10 Mo., 757, 760; *Whitesides v. Cannon*, 23 id., 457; *Segond v. Garland*, 23 id., 547; *Schafroth v. Amos*, 46 id., 114, 116; *Miller v. Brown*, 47 id., 50. So also has the supreme court of Alabama: *Collins v. Rudolph*, 19 Ala., 616; *Collins v. Lavenberg*, 19 id., 682; *Ozley v. Ikelheimer*, 26 id., 332; *Baker v. Gregory*, 28 id., 544; *Caldwell v. Sawyer*, 30 id., 283 ; *Cowles v. Morgan*, 34 id., 535. Also Kentucky: *Jarmin v. Wilkerson*, 7 B. Mon., 293; *Bell v. Keller*, 13 id., 381, 384, et seq. And see the following cases: *Greenough v. Wiggington*, 2 Greene, (Iowa,) 435; *Patton v. Kinsman*, 17 Iowa, 428; *McCormick v. Holbrook*, 22 id., 487; *Dobbin v. Hubbard*, 17 Ark., 189. Some of the cases relied on to show that a married woman cannot make a valid contract charging her separate estate are actions *at common law* in states where equity and common law jurisdictions are kept separate and distinct. Of course such cases are not applicable in this state. Of this class is the case of *Jones v. Crosthwaite*, 17 Iowa, 393, referred to by counsel for plaintiff in error. In connection with this case, see the case of *Patton v. Kinsman*, 17 Iowa, 428. Another class of cases is where a married woman at the time she makes the contract appropriates a certain piece of property (either hers or her husband's) for the payment of her obligation, by way of mortgage or pledge or the like. In such cases it has been held that no other property was intended to be appropriated or charged, upon the maxim that the express mention of one thing is the exclusion of another. Such was the case of *Johnson Co. v. Rugg*, 18 Iowa,

137, referred to by counsel for plaintiff in error. Of course this class of cases is not applicable to the case at bar. Another class of cases is where a court of equity, under the peculiar circumstances of the case then under consideration, there being fraud, overreaching, or an undue advantage taken of the woman's affections, frailties or infirmities, could not in equity and good conscience charge her separate property. Of course that class of cases is not applicable to this case. In another class of cases we don't think the law has been correctly laid down. Such is the case of *Yale v. Dederer*, 22 N. Y., 450, referred to by counsel for plaintiff in error.

The true doctrine seems to be this: Whenever a married woman enters into a contract (not for necessaries) for the payment of money, she does not bind her husband nor her husband's property, nor herself personally; but she binds her own property which she holds separate from her husband.

It seems scarcely necessary for us to say anything with reference to our own statutes concerning the rights of married women, except to say that they do not change the rules of equity so as to affect the decision of this case. But still it may not be out of place to offer a few suggestions concerning them. Section 2 of ch. 62, Gen. Stat., 563, reads as follows:

" SEC. 2. A married woman, while the marriage relation subsists, may bargain, sell, and convey her real and personal property, and enter into any contract with reference to the same in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property."

Other sections provide that a woman may sue and be sued, as if she were sole, may carry on trade and business, perform labor or service, etc., on her sole and separate account; but' § 2 is the one more directly involved in the consideration of this case; and in fact that portion of said section which provides that a married woman " may enter into any contract with reference to " her separate estate " in the same manner, to the same extent and with like effect as a married man may in relation to his real and personal property," is about all that we need consider. It is claimed that the note sued on is not

a contract "with reference to" or "in relation to" the separate property of Mrs. Deering. That it has no direct reference to any specific article or portion of said property, will certainly be conceded. But if the great weight of judicial decisions in this country upon contracts made by married men, or other persons not under disability, is to have any force in the determination of this question, then it must be equally clear that such a contract as the note sued on has reference, more or less remote, to the general property of the person signing the same. If it has not such reference, then it has no reference to anything whatever, but is totally and absolutely void. A married woman cannot by her contract bind herself personally, as a married man can, and therefore, if she does not bind her property by her general engagements, she does not bind anything. Now as a married woman may enter into contracts with reference to her separate property "in the same manner" as a married man may in relation to his, we shall proceed to consider in what manner a married man may enter into contracts with reference to his property. And here it will be proper for us to say that so far as this case is concerned no distinction can be made between the contract of a married man and the contract of any other person not laboring under any disability. Those who claim that the contract of a married woman has no reference to her separate property unless expressly so stated in the contract itself, must claim that there can be nothing contained in any contract unless it is contained in the express words or terms of the contract itself. There is some room for such a claim, and decisions of courts may be found to support it; but the great weight of authority in this country is unquestionably on the other side. It is almost universally held that all the laws of the country in force at the time and place where the contract is made, which can materially affect the contract, enter into and form a part of the contract: *Greer v. McCarter*, 5 Kas., 18, 22; *Mather v. Bush*, 16 Johns., 233, 249 to 251; *Blanchard v. Russell*, 13 Mass., 1, 16; *Moore v. Fowler*, Hampstead C. C., 536; *Bronson v. Kinzie*, 1 Howard, 315; *McCracken v. Howard*, 2 id., 612;

*Harrison v. Stepp*, 8 Blackford, 455; *Nelson v. Rountree*, 23 Wis., 371; *Jackoway v. Denton*, 25 Ark., 625, 642. This is especially true where both parties live in the same state, and where the contract is made and to be performed in the state where the parties reside. It is said that the parties contract with reference to the laws, and make them a part of their contract. Hence such laws cannot be materially changed without impairing the obligation of said contract. (U. S. Const., art. 1, § 10, sub. 1; *Bronson v. Kinzie*, 1 How., 311, 315.) It is true that some courts have said that the remedy given by law for the enforcement of the contract, does not enter into or form any part of the contract; but in the light of other decisions this is probably not strictly correct. It is probably true that the parties do not contract for the specific remedy in force when they make their contract; but it is certainly as true that they do contract for a substantial remedy. It is true that the remedy may be changed; but unless a substantial remedy still remains, the act changing the remedy is void, tending to impair the obligation of the contract: *Oatman v. Bond*, 15 Wis., 28; *Hasbrouck v. Shipman*, 16 id., 296; *Call v. Haggar*, 8 Mass., 430; *Conkey v. Hart*, 14 N. Y., 30; *Jackoway v. Denton*, 25 Ark., 625, 642; *McCracken v. Hayword*, 2 How., 612; *Blair v. Williams*, 4 Littell, 35, 37, 38, 39; *Lapsley v. Brashbears*, 4 Littell, 47; *Corn Bank of Natchez v. Chambers*, 8 Smedes and Marshall, 56, et seq. With regard to *evidence* see: *Jackson v. Howe*, 19 Johns., 83; *Robinson v. Howe*, 13 Wis., 341, 347; *Smith v. Cleveland*, 17 Wis., 556, 568, et seq.; *Nelson v. Rountree*, 23 id., 368, 371. We suppose it is well known by everybody that the property of a married man is liable for all his debts and obligations, although no specific mention of his property be made in his contract. It is not necessary that a court have jurisdiction of his person in order to render judgment against his property on such a contract, subjecting the property to the payment of his debts, or the fulfillment of his obligations. He may be beyond the jurisdiction of the state; but if his property remains, it is liable. And this liability springs as well from his contract as from the law.

As to how far a man contracts with reference to his property when he makes a general contract, without specifically mentioning any of it, has been many times adjudicated in this country. The Federal Constitution, art. 1, § 10, sub. 1, provides that no state shall pass any law impairing the obligation of contracts; and under this provision it has been necessary many times to determine what belongs and what does not belong to the contract. Mr. Sedgwick says: " States may pass retrospective laws, however unjust; may pass acts of a judicial nature, however clearly overstepping the line of legislative power; they may pass acts divesting vested rights; they may violate express provisions of their own constitutions. Acts of these classes, however objectionable, are not within the scope of the restrictions of the Federal Constitution." (Sedg. Stat. and Const. Law, 639.) It is only when states pass laws affecting the contract itself that such laws come within the said Federal restriction.

In every contract it must be presumed that each party agrees that all his property, except such as may be exempt by law, or such as may be exempted by the terms of the contract itself, shall be liable for the fulfillment of the contract. Hence any general exemption law, exempting all a debtor's property, passed after a contract has been made, would be void, as tending to impair the obligation of the contract. This is the generally accepted doctrine, found however only in the elementary works, and in the dicta of courts, and not in any judicial decision, as no state has yet passed any law exempting all the debtor's property. It has been held that where only a portion of the debtor's property was exempted from execution the law exempting the same was void: *Forsyth v. Marbury*, Charlton, (Geo.,) 324; *Quackenbush v. Danks*, 1 Denio, 128; *Danks v. Quackenbush*, 3 Denio, 594; *Quackenbush v. Danks*, 1 N. Y., 129. But now it seems to be settled that a law may be valid that exempts a portion of the debtor's property, such as household furniture, agricultural implements, etc., provided that such portion is not great enough to materially impair the obligation of the contract sought to be enforced: *Morse v.*

*Gould*, 11 N. Y., 281; *Rockwell v. Hubbel*, 2 Doug. (Mich.,) 197; *Bronson v. Kinzie*, (per Taney, C. J., *obiter dictum*,) 1 How., 311, 315; *Cusic v. Douglas*, 3 Kas., 123. But how even such laws as those last mentioned can be sustained upon any logical system of reasoning cannot easily be understood. If the question should ever be taken to the supreme court of the United States, that court would probably declare a different doctrine. A statute of New York, exempting under certain circumstances all the future acquisitions of property, was held void by the supreme court of the United States. This law provided that if the debtor should deliver up all his property to be applied in payment or partial payment of his debts, that after a certain time he should be discharged, and that all his future acquisitions should be exempt from such debts. It was held that this law was unconstitutional and void, that it impaired the obligation of contracts: *Sturges v. Crowninshield*, 4 Wheat., 122. "The court held that the obligation of a contract was not fulfilled by a *cessio bonorum*, for the parties had not merely in view the property in possession when the contract was made, but its obligation extended to future acquisitions; and to release them from being liable, impaired the obligation of the contract." 1 Kent Com., 420. See also upon this subject, *McMillan v. McNeil*, 4 Wheat., 209; *Far. & Mech. Bank v. Smith*, 6 id., 131; *Ogden v. Saunders*, 12 id., 213; *Boyle v. Zacharie*, 6 Peters, 348; *Baldwin v. Hale*, 1 Wall., 233; *Springer v. Foster*, 2 Story, 387; *Woodhull v. Wagner*, 1 Baldwin, 300; *Moore v. Fowler*, 1 Hemp., 536.

When a contract is made with a corporation at a time when by statute the stock of the stockholders is liable for the debts of the corporation, the legislature cannot repeal such statute and thereby *exempt* such stock from the payment of such debts, for such repeal would impair the obligation of the contract made between the creditor and the corporation, which contract the corporation had from the stockholders (who were virtually the sureties of the corporation to the amount of their stock) the implied authority to make: *Hawthorne v. Calef*, 2 Wall., 10, and cases there cited. In Georgia it has been

decided that "A state law which impairs the obligation of a contract made *prior* to its passage is unconstitutional and inoperative. And it is equally so whether the contract exists in its original shape, or has been merged in a judgment." "A judgment in Georgia constitutes a *lien* from its date on all the property of the debtor, and is constructive notice to all the world; and this lien is effectual against all subsequent claims to the property derived from and through the debtor." A law which prohibits a levy on a portion of the debtor's property previously subject to an existing judgment is unconstitutional, as it impairs the obligation of a contract." *Forsyth v. Marbury,* Charlton, (Geo.,) 324. And where a statute makes it more difficult for the creditor to reach the debtor's property, and thereby substantially interferes with the enforcement of the contract or the collection of the debt, the statute is void. For instance, when the law under which a contract is made authorizes property to be sold on execution to the highest bidder it will be presumed that the parties contracted that it should be so sold (if sold at all,) and a law afterwards passed requiring that it should be appraised and sold for not less than two-thirds of its appraised value, *is a law impairing the obligation of such contract,* and is therefore void: *McCracken v. Hayword,* 2 How., 608; *Willard v. Longstreet,* 2 Doug., (Mich.,) 172; *Rawler v. Hooker,* 21 Ind., 144, and cases there cited. And generally, the law in force at the time the contract is made is the law which governs in the sale of property sold on execution to satisfy a judgment rendered on such contract: *Harrison v. Stepp,* 8 Blackf., 455. Also a law passed after a contract has been made staying judgment or execution on such contract is generally held to be void, on the ground that it prevents the creditor from seizing the debtor's property to satisfy the debt, as soon as the parties are presumed to have contracted that it might be so seized: *Bumgardner v. The Circuit Court,* 4 Mo., 50; *Blair v. Williams,* 4 Litt. (Ky.,) 34; *Hasbrouck v. Shipman,* 16 Wis., 296; *Bunn v. Gorgas,* 41 Penn. St., 441; *Stevens v. Andrews,* 31 Mo., 205; *Burt v. Williams,* 24 Ark., 91. So also and for the same

reason, a law passed after a contract has been made giving to the debtor the right to redeem his property from a sale on execution, or extending the time for such redemption, has been held void: *Thorne v. San Francisco*, 4 Cal., 127, 139 to 142.

But we think we have already furnished sufficient illustrations to show that whenever a man contracts, he contracts with reference to all his property (not exempt,) unless he otherwise express it in his contract. The decisions that we have referred to, and many others which we might refer to, could never have been made if such were not the law. See also *McCormick v. Holbrook*, 22 Iowa, 487. He contracts with reference to his property in this way: He makes his contract; the law provides what shall be done with his property if he does not perform the same; he knows or is presumed to know the law, and to make it a part of his contract. For instance, suppose he gives a promissory note. His contract will then be in legal effect as follows: " One year after date, for value received, I promise to pay A. B., or order, one hundred dollars, with interest. But if I do not so pay the same, then I further agree in accordance with the present law, that said A. B., or his assignee, may sue me, obtain a judgment for that amount, have an execution issued and levied on my property, and have the same sold to satisfy said execution." This is a married man's contract with reference to his property. A married woman may under said § 2 of the married woman's act contract " in the same manner, to the same extent, and with like effect," with reference to her property.

We do not think that the said answer of the said defendant stated a good defense to the plaintiff's action. Therefore the demurrer to the answer was properly sustained, and the decision of the court below is affirmed.

All the Justices concurring.