The People ex rel. Helen B. Pells, Appellants, v. The Board of Supervisors of Ulster County, Respondent

An order of a County Court granted upon notice to the board of supervisors of the county, in pursuance of the act of 1871 extending the powers of such boards (chap. 695, Laws of 1871), recommending said board to correct an erroneous assessment and to refund to the party aggrieved the amount erroneously assessed, is mandatory, and upon failure of the board to appeal has the same legal effect as a final judgment. A *mandamus* will lie against the board to compel obedience to such order, in case of its refusal to comply therewith.

· Said statute applies as well to errors and irregularities in assessments of the character specified, existing at the time of its passage, as to those occurring thereafter. (Lott, Ch. C., and Dwight, C., dissenting.

*People ex rel. Pells* v. *Bd. Suprs. Ulster Co.* (63 Barb., 83) reversed.

(Argued January 12, 1875; decided May term, 1875.)

Appeal from order of the General Term of the Supreme Court in the third judicial department, reversing an order of Special Term which directed a peremptory *mandamus to* issue requiring defendant to refund to the relator an amount specified on account of illegal and erroneous assessments. (Reported below, 63 Barb., 83.)

The facts appear sufficiently in the opinion.

*M. Schoonmaker* for the appellant. The relator was entitled to relief by mandamus. (1 Kent's Com., 455; Dwar. on Stat., 734; 9 Law Lib., 67.) The act of 1871, chapter 695, applied to rights existing at the time of its passage. (*Brewster* v. *Brewster*, 32 Barb., 428; 1 R. S., 742, § 18; *Sayre* v. *Wisner*, 8 Wend., 664; 10 id., 365; *Spoor* v. *Wells*, 3 Barb. Ch., 199; *Fowler* v. *Chatterton*, 6 Bing., 258; *Hilliard* v. *Leonard*, 1 M. & M., 297; *Freeman* v. *Noyes*, 1 Ad. & El., 333; *Foster* v. *Essex Bk.*, 16 Mass., 245; *People ex rel. Peake* v. *Suprs. Col. Co.*, 43 N. Y., 130.) A peremptory *mandamus* was the proper remedy. (*Morris* v. *People*, 3 Den., 381; *People* v. *Suprs. Col. Co.*, 10 Wend., 363; *People* v. *Suprs. Cayuga Co.*, 2 Cow., 530.)

*Samuel Hand* for the respondent. The act of 1871 is prospective. (*Dash* v. *Van Kleek*, 7 J. R., 477; *In re Oliver Lee Bk.*, 21 N. Y., 12; *Sanford* v. *Bennett*, 24 id., 20; *Johnson* v. *Burrill*, 2 Hill, 239; *People* v. *Suprs. Col. Co.*, 10 Wend., 363; *Van Rensselaer* v. *Livingston*, 12 id., 490; *Jarvis* v. *Jarvis*, 3 Edw., 462; *Bolles* v. *Duff*, 7 Abb. [N. S.], 385; *Bates* v. *Stearns*, 23 Wend., 482.) The decision of the assessors upon the question of valuation of personal property was final. (Laws 1851, chap. 176; *Albany, etc., R. R. Co.* v. *Town Canaan*, 16 Barb., 244; *Bank* v. *Burrell*, 10 Wend., 186; *People* v. *Buffalo R. R. Co.*, 48 N. Y., 70.)

Reynolds, C. By chapter 695 of the Laws of 1871, it was substantially enacted that the board of supervisors of any county, except New York and Kings, might, by a vote of two-thirds of the members elected thereto, among other things, upon the recommendation of the County Court of the county, correct any manifest clerical or other error in any assessments or returns made by any town officer to such board of supervisors, or which shall properly come before such board of supervisors for their action, confirmation or review; and upon the order of such court, made on application of the person aggrieved, and notice thereof to such board, it shall refund to such person the amount collected from him of any tax illegally or improperly assessed or levied. And it was also provided that an appeal might be taken from such order as from a judgment of said court in an action.

Under the provisions of this statute, the relator, on the 28th day of November, 1871, upon due notice to the board of supervisors of the county, upon a petition showing that, during the years 1866, 1867 and 1868, she had been erroneously assessed by the assessors of Kingston, by an over-valuation of her personal property, and the collection of an illegal tax for three years, amounting in the aggregate to $494.65, applied to the County Court of the county of Ulster, for an order recommending the correction, by the board of supervisors, of the alleged erroneous assessment; and, upon this applica-

tion, an order was made by the County Court declaring that the relator had been illegally and erroneously assessed and improperly compelled to pay taxes for the three years named; and recommending the board of supervisors to refund to the relator the amount thus erroneously assessed, with interest. This order was presented to the board, and a demand made that they act in conformity to it, which was refused. No appeal was taken from this order by the supervisors; and, in January, 1872, upon due application, a *mandamus* to compel the supervisors to refund the tax, in pursuance of the recommendation of the Ulster County Court, was granted by the Supreme Court at Special Term. This order was reversed at General Term, and upon an appeal by the relator from the last-named order, the question now arises.

This statute of 1871 is, in many respects, peculiar and exceptional in its provisions, but I think it was intended by the legislature to afford a simple and expeditious remedy for the many wrongs done by the illegal assessment and taxation of property. When this statute was enacted, it was quite well settled that the courts, in the exercise of their ordinary jurisdiction, could afford but little, if any, relief in such cases, even of admitted error in the taxing officers. It was very proper that the question whether or not any error had been committed in a given case should be first determined by a court of competent jurisdiction, upon due notice of all parties concerned, and if any error was found to exist, it did not much matter whether its order or judgment was, in form, mandatory or by way of recommendation to the supervisors. The legislature chose the latter form, and I think a recommendation duly made by the County Court, in pursuance of the statute, became mandatory, unless some cause to the contrary was shown. The supervisors were at liberty to appeal from any order made which they thought erroneous, and failing to do that, I think the order was of the same legal effect as a final judgment rendered in favor of the relator for the amount of taxes illegally assessed and collected, which the supervisors were not at liberty to disregard; in respect to it,

they had no judicial or legislative function to discharge, but simply the ministerial duty of providing, by taxation or otherwise, for the payment of a debt finally adjudged to be due from the county.

Unless this construction shall prevail, the statute would seem to be entirely abortive. But for the statute, it is quite certain that the board of supervisors could not be coerced by *mandamus* to allow or provide for the payment of the relator's claim, except it had been previously established by the judgment of a competent judicial tribunal. If, after a proceeding before the County Court, upon due notice or hearing of the parties, and the court shall make an order, in pursuance of the statute, recommending the payment of the erroneous tax, from which no appeal is taken, the board of supervisors may assume to disregard the recommending order of the County Court, it is very clear that the statute is of no account whatever; but we are not to assume that the statute has no meaning, and if it has any, the board of supervisors must in such a case respect the recommendation of the County Court. Indeed, the act says, in terms, that upon the order of the court, made on application and notice, the board " shall refund" the amount illegally assessed.

It is said the statute referred to was intended to have no retroactive effect. Ordinarily, a statute only speaks for the future, and where vested rights are involved, the legislature cannot affect the present or the past; but there are many remedial statutes that mainly effect past transactions, and are enacted for that purpose. Statutes confirming illegal or irregular proceedings of various public officers are of this character, and can have no relation to other than past transactions. (1 Kent's Com., 455; *Foster* v. *The Essex Bk.*, 16 Mass., 245; *Underwood* v. *Libby*, 10 S. & R., 107.) It is to be observed that the first part of the section referred to provides for legalizing, by the board of supervisors, the informal acts of any town meeting, or the irregular acts of any town officer, upon the recommendation of the County Court, and then, in the same connection, provides for the refunding

taxes illegally or improperly assessed or levied upon like recommendation of the County Court. It appears to me very plain that by this act the legislature intended to provide a simple and speedy remedy for evils then existing or supposed to exist, as well as such of a like character as might happen in the future. This is the more apparent from the fact that in most of the cases covered by the statute the courts could afford no relief to a party aggrieved, and the board of supervisors were equally without legal authority to redress the wrong. That errors of this character had often occurred was matter of common knowledge, and the legislature, in my opinion, intended, by the act of 1871, to afford a remedy to any party aggrieved in the past, or who should have full cause of complaint in the future.

The order of the General Term should be reversed, and that of the Special Term affirmed, with costs.

Dwight, C. (dissenting). The disposition of this cause depends upon the correct construction of one of the clauses of chapter 695 of the Laws of 1871.

The act provides that on the order of a County Court, made on application of the person aggrieved, and notice thereof to the board of supervisors of any county except New York and Kings, such board shall refund to the person aggrieved the amount collected from him of any tax illegally or improperly assessed or levied. An appeal may be taken from the order of the court in the same manner as from its judgment in an action. There is a further provision enabling the board of supervisors to raise the amount to be refunded.

The relator, in November, 1871, applied to the county judge of Ulster county, under this statute, for an order directing the defendants to refund to her the taxes collected under assessments in 1866, 1867 and 1868 upon an excessive valuation of her property in those years. The defendants having refused to comply with this order, the question at issue is, whether they can be compelled to do so by *mandamus*.

There are no words of a retrospective nature in the act, and

it will be necessary to consider whether the terms should be so construed as to give them a retrospective operation.

It is an elementary rule of legal interpretation that a statute in general is not to have a retrospective effect. This is a rule founded not simply upon technical doctrines of the English law, but is a principle of general jurisprudence. (*Dash* v. *Van Kleeck*, 7 J. R., 477.) The rule of construction becomes extremely strong when a retrospective operation of the law would work injustice or interfere with vested rights. In this case the statute is to be taken as prospective only, unless its language is inconsistent with that interpretation. (*McEwen* v. *Den*, 24 How. [U. S.], 242; *Danks* v. *Quackenbush*, 1 N. Y., 129; *Harvey* v. *Tyler*, 2 Wall. [U. S.], 328.) Such legislation is so subversive of some principle that it cannot be supposed that the legislature will resort to it, unless its extent is made extremely clear.

A different view has been taken of the case where the statute confirms rights already existing, and advances the remedy by curing defects and adding to the means of enforcing existing obligations. The instances commonly cited are a statute to confirm former marriages defectively celebrated or a sale of land defectively made or acknowledged. Chancellor KENT explains this principle as follows: The legal rights affected in those cases are deemed to have been vested, subject to the equity existing against them, and which the statutes recognized and enforced. He adds: " The cases cannot be extended beyond the circumstances on which they reposed without putting in jeopardy the energy and safety of the general principle." (1 Comm., 456 [12th ed.].) The courts may, on slight evidence of the intent of the legislature in such cases, as those which have just been referred to, give the law a retrospective operation.

If it be temporarily assumed, for the sake of argument, that the law now under consideration belongs to the class described by Chancellor KENT, and that the relator has a vested right of an imperfect nature, still it is necessary, in order to hold in her favor, to go much further than the distinguished commentator,

and to decide that the law shall be construed to have a retro-
spective operation, though there is no affirmative evidence,
whatever, that such was the intention of the legislature.　I do
not think that this is a sound rule of construction.　No law is
to have a retrospective operation unless there is some evidence
of intent to that effect.　The legal maxim is, *Nova constitutia
futuris formam imponere debet non praeteritis.*　If this be
sound the plain presumption is, that every enactment is to be
prospective, and not retrospective, in its operation.　The bur-
den of proof is on one who asserts in any particular case the
contrary, to give some reason for maintaning his opinion,
which must be deduced from the phraseology of the law itself.
The Roman Code expressly adopts the principle.　It is there
laid down that statutes act prospectively, and not retrospect-
ively, unless there is an express provision that they be applied
to the past and to matters already pending.　*Nisi nomination
et de praeterito tempore et ad huc pendentibus negotiis cautum
sit.*　(Code, 1, 14, 7; see *Moon* v. *Durden,* 2 Exch. [W., H.
& G.], 22.)　It is said in this case, by ROLFE, B. (Lord CRAN-
WORTH), that the rule is one of such obvious convenience and
justice that it must always be adhered to in the construction of
statutes, unless in cases where there is something on the face of
the enactment putting it beyond doubt that the legislature
meant it to act retrospectively.　Lord COKE affirms, in his
Institutes, that the correct rule is that a new statute gives a
rule for the future, and not for the past, and in this view
he is confirmed by Bacon and other law writers.

The rule is well stated in *Jarvis* v. *Jarvis* (3 Edw. Ch.,
465).　It is there said that "it is a rule never to apply a statute
retrospectively by mere construction.　If its terms are such as
clearly to indicate that the legislature intended it should ope-
rate upon or apply to past transactions of a civil nature, then
the courts may permit it so to apply, provided it takes away
no previously vested rights nor impairs the obligation of con-
tracts.　But if a statute is silent in its terms or at all ambigu-
ous in relation to its effect and application to past events,
courts of justice are bound not to apply it to any other than

to those which have arisen since the law took effect, and are
not at liberty to consider it other than as a prospective law
operating prospectively upon the affairs and conduct of men.
*   *   *   It may possibly be inferred from some of the cases
that courts have refused to consider statutes retrospective,
because such a construction and application of them would
take away previously vested rights; but if this had entered
into the consideration for the rule, it is not the only reason on
which the decisions have been made, for wherever the law has
a tendency to change or alter, as well as to take away rights
previously acquired, or to give a new remedy, or to extend
and enlarge any old one affecting previous rights, the same
doctrine has been held." (*Warren Mfg. Co.* v. *Ætna Ins. Co.*,
2 Paine C. C. [U. S.], 501.)

The case of *Jarvis* v. *Jarvis* involved the construction of a
law affecting the remedy for a breach of the marriage contract.
It was the case of an action for divorce. The marriage took
place out of the State. The New York Revised Statutes give
the court jurisdiction in such a case where the parties have
become and remained inhabitants of this State at least one year,
and the wife is an actual resident at the time of exhibiting the
complaint. The husband and wife resided in the State several
years before the statute was passed, yet, as the wife only, who
was the complaining party, had resided in the State after the
statute took effect, is was held that the court had no juris-
diction.

The conclusion of SPENCER, J., in *Dash* v. *Van Kleeck* (7
J. R., 447), must be accepted, that all laws are to be construed
according to the intention of the legislature, and, in getting
at that intention, courts must presume a prospective and not
a retrospective operation of the law was meant, unless such
presumption is repelled by express words.

But if a law, purely remedial, should be construed as acting
retrospectively, without express words to that effect, I am of
the opinion that the present law does not belong to the class
of remedial acts. The language of Chancellor KENT, which
I deem to be accurate, confines the remedial statutes, to which

a liberal rule of construction is to be applied, to those cases
where there are existing obligations, or legal rights are vested
subject to equities. In the present case, there was no vested
right, either legal or equitable. When the relator had paid
her taxes in the years specified, she had no remedy whatever
for their recovery. There was no right, because there was no
remedy. The case of a moral obligation is not to be con-
founded with a legal right. The State, through its agent, had
exercised the power of taxation in an irregular or excessive
manner. It had furnished no means, through the regular
operation of the laws, whereby the money could be refunded
to the suffering party. It is in the highest degree proper to
correct such anomalies for the future, while it cannot be said
that, under the law existing when these taxes were paid, the
relator had any right to have them refunded. It was said by
Lord HOLT, in *Ashby* v. *White* (2 Ld. Raym., 953) that it was
a vain thing to imagine a right without a remedy. Want of
right and want of remedy are reciprocal. (Broom's Leg.
Max., 180.) Mr. Austin, in his Lectures on Jurisprudence,
carefully distinguishes between a legal and a moral right, and
lays down a proposition which cannot be successfully impugned
from a legal point of view, that there are no rights but those
which are the creatures of law. A denial of this proposition
confounds a moral with a legal right.

A person has a right when the law authorizes him to exact
from another an act or forbearance. The test of a right is,
that, independently of positive provision, the acts or forbear-
ance enjoined are not incapable of being enforced civilly, or
in the way of a civil action, at the discretion or pleasure of
the party towards whom they are to be done or observed.
(Austin on Jur., vol. 1, 410 [3d ed.].) He adds: Right —
The capacity or power of exacting from another or others,
acts or forbearances, is the nearest to a true definition.

If these views are sound, the relator in the present case
had no right as against the board of supervisors when the
law of 1871 was passed. To give that act a retrospective
operation would not be to further the remedy, but it would

be absolutely to create the right itself, under any rule of construction. Such a law cannot have a retrospective operation without a clear and distinct expression of the legislative will. (*Dash* v. *Van Kleeck, supra; McEwen* v. *Den, supra; Harvey* v. *Tyler, supra; Atkinson* v. *Dunlap,* 50 Me., 111; *Plumb* v. *Sawyer,* 21 Conn., 351; *Railroad* v. *Cilley,* 44 N. H., 578.)

It may be added that the retrospective construction of such acts as the present is attended with serious danger to the public interests. The board of supervisors is necessarily a fluctuating body, and have but little knowledge — the members in any year — of, or take but a languid interest in, affairs that transpired prior to their official existence. The retrospective construction of the law in controversy opens wide the door to the reconsideration of all taxes that have been heretofore improperly levied, without limitation in respect to time. The application to the county judge will be substantially *ex parte*, as the board of supervisors will naturally take but little care in opposing the allowance of return in past transactions, and the evidence in refutation of the application will not readily be at hand. There is strong reason to suppose that heavy burdens may thus be imposed upon the tax-payers upon slight and insufficient grounds. The law, in its application to the future, is sufficiently liberal; when referred to past taxation, it may be used to bolster up unfounded or insufficient claims.

The order of the court below should be affirmed.

For reversal: GRAY, EARL and REYNOLDS, CC.; for affirmance: LOTT, Ch. C., and DWIGHT, C.

Order of General Term reversed, and that of Special Term affirmed.